IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| J.R. SIMPLOT COMPANY, a Nevada corporation, | ) ) ) | Case No. CV 06-141-S-EJL-CWD |
| Plaintiff, | ) ) | **MEMORANDUM DECISION AND ORDER** |
| v. | ) ) | |
| NESTLÉ USA, INC., a Delaware corporation, | ) ) ) | |
| Defendant. | ) ) | |

**I.**
**Introduction**

After protracted litigation, Defendant Nestlé U.S.A., Inc. ("Nestle") emerged the victor

after the Court granted its Motion for Summary Judgment (Docket No. 69) on all remaining

counts in Plaintiff J.R. Simplot Company's ("Simplot") Second Amended Complaint (Docket

No. 39). As the prevailing party, Nestle seeks reimbursement of its attorneys' fees and costs

expended, which total $1,205,381.50 in attorney fees and $285,610.68 in discretionary costs.[1]

(Docket No. 72.) Simplot objects, contending that fees should not be awarded on all counts and

---

[1] Nestle also submitted a Bill of Costs for nondiscretionary costs totaling $30,694.14. (Docket No. 71.)
The Clerk of the Court approved $28,900.24 of those costs. (Docket No. 89.)

**MEMORANDUM DECISION AND ORDER - 1**

also that the amount of fees and costs claimed are unreasonable and excessive.  (Docket No. 80.)
The Court conducted a hearing on Nestle's Petition for Attorney Fees and Non-Taxable Costs on
May 13, 2009, during which both parties presented oral argument.

After fully reviewing the record and carefully considering the parties' briefs and oral
argument, the Court finds that Nestle is not entitled to all of the attorney fees and costs it seeks,
as the Court will more fully explain.

## II.
## Factual and Procedural Background

Simplot initiated this lawsuit against Nestle raising two claims for breach of contract, one
of which was based upon the parties' Distribution Agreement while the other was based upon the
parties' Asset Purchase Agreement.  Five additional claims related to the breach of contract
claims: breach of the covenant of good faith and fair dealing; fraud; breach of fiduciary duty;
negligent breach of fiduciary duty; and fraudulent concealment.  (Second Am. Compl. Docket
No. 39.)  Simplot voluntarily dismissed counts four (fraud) and six (negligent breach of fiduciary
duty) of the Second Amended Complaint prior to the issuance of the Court's decision on Nestle's
Motion for Summary Judgment.  (Docket No. 52 at 2.)

The parties disputed the nature of their relationship involving the distribution and sale of
dehydrated potato products as reflected by the parties' written contracts.  Nestle filed a motion
for summary judgment, which was granted, resulting in a judgment for Nestle and dismissal of
the case.  (Docket No. 69, 70.)[2]  Nestle now seeks reimbursement of its attorneys' fees and costs,

_____

[2]  Simplot has appealed the decision.  (Docket No. 74.)

**MEMORANDUM DECISION AND ORDER - 2**

claiming it is entitled to attorney fees as the prevailing party under Idaho Code § 12-120(3) and Fed. R. Civ. P. 54(d), and to non-taxable costs pursuant to Dist. Idaho Loc. Civ. R. 54.2.

The three contracts executed by the parties have choice of law provisions and provisions concerning expenses and attorney fees.  The first contract, the Asset Purchase Agreement, (Aff. of Burke, Ex. A, Docket No. 80-3), specified that the "Agreement shall be governed by and construed in accordance with the domestic laws of the State of California without giving effect to any choice or conflict of law provision or rule." (*Id.* at 10.)  It also contained a fee provision that states, "Expenses.  Buyer and Seller will bear its own costs and expenses (including legal fees and expenses) incurred in connection with this Agreement and the transactions contemplated hereby." (*Id.*)  The Asset Purchase Agreement specified that Simplot would be purchasing Nestle's right, title, and interest in Nestle's inventory of certain dehydrated potato products, Nestle's customer list, and certain rights in existing contracts. (*Id.* at 1.)

The second contract, the Amended and Restated Purchase Agreement, (Aff. of Burke, Ex. B, Docket No. 80-4), specified that it "shall be construed, interpreted and the rights of the parties determined in accordance with the laws of the State of Delaware (without reference to its choice of law provisions)." (*Id.* at 47.)  The parties did not include an expense or fee provision in the Amended and Restated Purchase Agreement.

The third contract, the Distribution Agreement, also contained a Delaware choice of law provision, stating "[t]his Agreement shall in all respects be construed, interpreted and enforced in accordance with and governed by the laws of the State of Delaware." (Aff. of Bithell, Ex. C at 15, Docket No. 72-6.)  The Distribution Agreement contained the following fee provision:

> Attorney Fees.  Should any litigation be commenced between the parties hereto concerning any provision of this Agreement or the

**MEMORANDUM DECISION AND ORDER - 3**

rights or duties of any party in relation thereto, the party or parties prevailing in such litigation shall be entitled, in addition to such other relief as may be granted, to a reasonable sum as and for their attorney's fees in such litigation which shall be determined by the court in such litigation or in a separate action brought for that purpose.

(*Id.* at 16.)

## II.
## Discussion

**A.      Arguments of the Parties.**

Despite the choice of law and fee clauses in the two contracts, Nestle argues that Idaho law, specifically Idaho Code § 12-120(3), entitles it to an award of all its claimed attorneys' fees. Idaho Code § 12-120(3) provides that in any "commercial transaction," the "prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs." Nestle contends that since Simplot's complaint was based upon breach of contract in a commercial transaction, and Simplot's fraud and other claims relate to those two contracts, it is entitled to all of its attorney fees under Idaho Code § 12-120(3). Nestle also directs the Court to the attorney fee provision in the Distribution Agreement, and claims that Simplot's complaint was based primarily upon allegations of its breach, again entitling it to all of its claimed attorneys' fees.

Nestle next claims that $1,205,381.50 in fees is reasonable. Nestle attorneys and support staff spent 4,402 hours on the case, with hourly rates ranging from $135 per hour for paralegals and up to $475 per hour for the senior partner. The intensive labor was necessary, Nestle contends, because Simplot continuously changed its theory of the case; produced over 300,000 pages of documents as well as 1,600 electronic spreadsheets; and exposed Nestle to potentially millions of dollars in damages.

**MEMORANDUM DECISION AND ORDER - 4**

Finally, Nestle argues its non-taxable expenses are awardable under Fed. R. Civ. P. 54(d)(2), because its non-taxable costs are "related" to its attorneys' fees.  Nestle contends that this provision allows for costs when such costs are recoverable pursuant to governing law incident to the award of attorney fees.  According to Nestle, because the governing law awarding fees is Idaho Code § 12-120(3), Idaho R. Civ. P. 54(d)(1)(D) is the "governing law incident to the award of fees."  Under Idaho R. Civ. P. 54(d)(1)(D), attorney fees are collected as costs. Nestle asserts, therefore, that since "attorney fees are costs under Idaho law, and since Federal Rule 54(d)(2) expressly provides for the award of costs not awardable under Federal law when allowed in conjunction with an award of attorney fees, Nestle is entitled to its nontaxable costs." (Nestle's Pet. for Attorney Fees at 10, Docket No. 72.)

Nestle then lists the costs it incurred, which include travel expenses ($24,883.31); photocopy charges ($3,036.60); telephone charges ($1,829.28); recording, subpoena issuing fee, and court records fees ($305.00); expert witness fees ($194,441.67); conference room rental/deposition preparations ($8,390.00); external hard drive for document production ($3,625.73); discovery production vendor fees ($13,959.29); witness fees for Camie Lynch ($6,272.11); mediation fees ($2,621.25); witness fees for Tim Connor ($3,345.25); consultation fees from Achieve Financial ($2,700.00); outside copy fees ($4,676.40); clerical overtime ($67.50); computerized legal research ($13,553.37); postage and courier charges ($508.92); process server fees ($50.00); and reproduction expenses ($345.00).

Simplot counters that Nestle ignores the three choice of law provisions in each of the three contracts, and fails to follow the holding in *Boise Tower Assoc., LLC v. Washington Capital Joint Master Trust Mortgage Income Fund*, Case No. 03-141-S-MHW, 2007 WL

**MEMORANDUM DECISION AND ORDER - 5**

4355815 (D. Idaho Dec. 10, 2007).  First, Simplot notes that the Amended and Restated

Purchase Agreement and the Distribution Agreement both contain a Delaware choice of law

provision, while the Asset Purchase Agreement is governed by California law.  Simplot contends

that neither state has a statute that mandates fees to prevailing parties in commercial transactions

absent a fee provision in the contract itself.  The only contract with a fee provision is the

Distribution Agreement, which is governed by Delaware law.  Simplot therefore argues that, to

the extent any fees are awarded by the Court, Nestle is at most entitled to one-third of its claimed

fees, representing the proportion of claims in the Second Amended Complaint related to the

Distribution Agreement.  To the extent the contracts do not govern an award of fees or are silent

on the subject, Simplot argues that *Boise Tower* requires a choice of law analysis resulting in the

application of either California or Delaware law, which would also result in the denial of

attorney fees absent a contractual provision.

      Simplot then argues Nestle's attorneys' fees are unreasonable and excessive in

comparison to its own attorneys' fees.  In comparison to Nestle, Simplot's attorneys and staff

spent 2,694.65 hours on the case, which represented 61% of the total time spent by Nestle

attorneys, and Simplot's attorney rates ranged from $110 per hour for staff to $300 per hour for

the senior partner.  Simplot also argues that Nestle overstaffed the case because Nestle had

several attorneys travel to depositions, hired two experts, and its team approach resulted in

duplicate time entries for the same task.

      As for Nestle's claimed non-taxable costs, Simplot argues that Federal procedural law,

not state law, governs cost awards.  According to Simplot, under Fed. R. Civ. P. 54(d) and 28

U.S.C. §§ 1920 and 1821, as well as Dist. Idaho Loc. Civ. R. 54.1, the claimed costs are not

**MEMORANDUM DECISION AND ORDER - 6**

allowed, and even if they are allowed, the costs are unreasonable and excessive.

**B.      Attorney Fee Claims.**

Nestle is incorrect that Idaho Code § 12-120(3) governs the fee issue in this case, and

ignores the holding in *Boise Tower* that requires a choice of law analysis.  *Boise Tower* noted

that § 12-120(3) is a substantive contractual right and that, in diversity cases heard by the Idaho

district court, "[w]hile parties to a contract executed in Idaho and governed by Idaho law can

avail themselves of § 12-120, the converse is not true.  A contract entered into between parties in

another state would not automatically have a substantive Idaho statutory fee component in their

commercial agreements.  It would be unreasonable to conclude otherwise."  *Boise Tower Assoc.,*

*LLC*, 2007 WL 4355815 at *3.  In this case, two sophisticated companies with access to quality

legal advice negotiated contracts to govern their respective rights.  The gravamen of Simplot's

claims involved one count for breach of the Distribution Agreement, and one count for breach of

the Asset Purchase Agreement, with additional claims all arising out of the context of the parties'

business and contractual relationship.  Thus, the two contracts are the place to start, as is a

choice of law analysis.

Federal courts sitting in diversity must apply "the forum state's choice of law rules to

determine the controlling substantive law."  *Fields v. Legacy Health System*, 413 F.3d 943, 950

(9th Cir. 2005); *see also Sims Snowboards, Inc. v. Kelly*, 863 F.2d 643, 645 (9th Cir. 1988) ("If

the issue is 'substantive' – concerned with the legal rights of the parties– then a choice of law

analysis must be made."); *Boise Tower Assoc.*, *LLC*, 2007 WL 4355815 n.6 at *2 (noting that if

the matter is substantive, the law of the state, including its choice-of-law rules, applies).  The

**MEMORANDUM DECISION AND ORDER - 7**

parties' contracts contain a choice of law provision, and thus the Court must determine whether those substantive provisions are enforceable under Idaho law.

The choice of law rules Idaho applies differ in commercial versus non-commercial contexts.  In a commercial transaction governed by the Uniform Commercial Code, Idaho Code § 28-1-301(a) states that "when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties."  *See also Cerami-Kote, Inc. v. Energywave Corp.*, 773 P.2d 1143, 1145 (Idaho 1989) (citing Idaho Code § 28-1-105(1), now § 28-1-301(a), for the proposition that parties to commercial transactions have the power to choose the law applicable to their transaction).  The "reasonable relations" test generally means the law chosen must be that of a jurisdiction where a significant enough portion of the making or performance of the contract is to occur or occurs.  *Seeman v. Philadelphia Warehouse Co.*, 274 U.S. 403, 407 (1927); *Cerami-Kote, Inc.*, 773 P.2d at 1145.

In a non-commercial transaction, the Restatement (Second) of Conflicts of Laws § 187 (1971), which Idaho courts have endorsed, applies.  *Cerami-Kote, Inc.*, 773 P.2d at 1145 n.1. *See also DBSI Signature Place, LLC v. BL Greensboro, LP*, No. CV 05-051-S-LMB, 2006 WL 1275394 (D. Idaho May 9, 2006) (recognizing that Idaho enforces contractual choice of law provisions under the Restatement (Second) of Conflict of Laws).  The Restatement § 187 states:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless

**MEMORANDUM DECISION AND ORDER - 8**

either
> (a) the chosen state has no substantial relationship
> to the parties or the transaction and there is no other
> reasonable basis for the parties' choice, or
> (b) application of the law of the chosen state would
> be contrary to a fundamental policy of a state which
> has a materially greater interest than the chosen
> state in the determination of the particular issue and
> which, under the rule of § 188, would be the state of
> the applicable law in the absence of an effective
> choice of law by the parties.

The parties dispute whether the instant matter is "commercial" or "non-commercial," and differ in their application of the relevant legal standards.  Nestle argues that the UCC applies, and in the alternative that the Restatement applies, while Simplot argues that under the Restatement, it would be against Idaho's "fundamental policy" to apply any other state's law because Idaho Code § 12-120(3) represents Idaho's policy on attorney fees.  The Court need not decide whether the transactions underlying Simplot's complaint are commercial or non-commercial in nature, because under either Idaho Code § 28-1-301(a) or the Restatement, the contractual choice of law provisions in the Distribution Agreement and the Asset Purchase Agreement are enforceable.[3]

Under the UCC, Delaware and California both bear a reasonable relation to the transaction under the terms of the respective agreements.  Delaware is the state where Nestle was incorporated, and so Delaware law represents a reasonable choice.  California also bears a reasonable relation to the transaction, since it is the state where Nestle has its principal business

---

[3]  The UCC and the Restatement are almost identical on this issue.  In fact, the Official Comment to the UCC references Restatement (Second) Conflict of Laws § 187.

**MEMORANDUM DECISION AND ORDER - 9**

offices, and the state where Nestle's performance under the agreements occurred.  Accordingly, both Delaware and California bear a reasonable relation to the transaction under the UCC.

Under Section two of the Restatement § 187,[4] both Delaware and California satisfy the stated tests.  Delaware has a substantial relationship to Nestle, since it is the state of its incorporation.  Thus, Delaware represents a reasonable choice for the application of its law in the parties' contracts, and there is a reasonable basis for the choice of law.  Restatement (Second) Conflict of Laws § 187, Cmt. f  (it is only where there is no reasonable basis for choosing a particular state's law that the parties' choice will not be honored).  Similarly, California has a substantial relationship with Nestle and there is a reasonable basis for that choice.  Nestle's principal place of business is located in California and Nestle performed its obligations under the Agreements in California.

Subsection (a) of Section 187 is therefore satisfied, thus negating the requirement to analyze the parties' choice under subsection (b) because the two tests are stated in the disjunctive, requiring satisfaction of only one of the tests.  Accordingly, the Court need not reach a conclusion regarding Simplot's public policy argument under subsection (b), as that section is inapplicable in this case.[5]

_____

[4] Both parties argued their respective positions under Section two, and therefore the Court applies only that section.

[5]  The Court notes, however, that although Idaho has expressed a directive that in all commercial transactions governed by Idaho law the prevailing party is entitled to a mandatory award of attorney fees, *Myers v. Vermaas*, 753 P.2d 296 (Idaho Ct. App. 1988), the fact that Idaho law differs from California or Delaware law does not necessarily signify that application of another state's law would contravene Idaho public policy, *General Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1506 (9th Cir. 1995).  No Idaho court has held that application of another state's attorney fee laws violates Idaho public policy.  *See Boise Tower Assoc., LLC*, 2007 WL 4355815 at * 5 (applying Washington law regarding attorney fees under a choice of law analysis absent a contractual provision in the parties' contracts, despite potential application of Idaho Code § 12-120(3)).

**MEMORANDUM DECISION AND ORDER - 10**

1.      **Attorney Fees in California.**

Under California law, unless a contractual provision allows for an award of attorney fees,

the prevailing party is not entitled to attorney fees.  Cal. Code Civ. P. § 1021 (West 2009)

(unless provided by statute, attorney fees are left to the agreement of the parties); *Nassre v.*

*Superior Court*, 202 Cal.Rptr. 552, 553 (Cal.App. 1984) ("Absent an agreement or statute, a

party is generally precluded from recovery of attorney fees").  The relevant statute is Cal. Civ.

Code § 1717(a) (West 2009).  That section states:

> [i]n any action on a contract, where the contract specifically
> provides that attorney's fees and costs, which are incurred to
> enforce the contract, shall be awarded either to one of the parties
> or to the prevailing party, then the party who is determined to be
> the party prevailing on the contract, whether he or she is the party
> specified in the contract or not, shall be entitled to reasonable
> attorney's fees in addition to other costs.
> * * *
> Reasonable attorney's fees shall be fixed by the court, and shall be
> an element of the costs of suit.

California courts "liberally construe the term 'on a contract' as used within section 1717.  As

long as the action 'involves' a contract it is 'on [the] contract' within the meaning of [s]ection

1717." *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 76 Cal.Rptr.3d 325, 354 (Cal.

App. 2008) (quoting *Dell Merk, Inc. v. Franzia*, 33 Cal.Rptr.3d 694, 703 (Cal. App. 2005)).

When a contract action also involves equitable claims such as fraud, the apportionment of

a fee award "between fees incurred on a contract cause of action and those incurred on other

causes of action is within the trial court's discretion."  *Abdallah v. U.S. Sav. Bank*, 51

Cal.Rptr.2d 286, 293 (Cal. App. 1996).  Thus, if a cause of action based upon a contract

providing for attorney fees is "inextricably intertwined" with interrelated allegations based upon

**MEMORANDUM DECISION AND ORDER - 11**

the contract, it may be "impracticable, if not impossible, to separate the multitude of conjoined

activities into compensable or noncompensable time units."  *Abdallah*, 51 Cal. Rptr.2d at 293.

But the intertwined causes of action must relate to the contract action, and a litigant "may

not increase his recovery of attorney's fees by joining a cause of action in which attorney's fees

are not recoverable to one in which an award is proper."  *Reynolds Metals Co. v. Alperson*, 599

P.2d 83, 86 (Cal. 1979).  Moreover, when a tort action is combined with a contract action, the

specific language of the contract itself must be broad enough to encompass such claims before

the legal fees based upon tort claims may be said to be "incurred to enforce the contract" under

the terms of Section 1717.  *See Lerner v. Ward*, 16 Cal.Rptr.2d 486, 489 (Cal. App. 1993)

(construing contract language providing for attorney fees to the prevailing party in any lawsuit

"to which this Agreement gives rise" to encompass party's tort claims when contract claims were

dismissed before trial).  *See also Reynolds Metals Co.*, 599 P.2d at 86 (noting that litigant may

not recover fees on causes of action "beyond the contract," and may only recover attorney fees

under section 1717 as they relate to the contract action).

### 2.     Attorney Fees in Delaware.

Under Delaware law, as in California, prevailing parties are responsible for paying their

own attorney's fees unless a statute specifies otherwise or an equitable reason applies.  *Goodrich

v. E.F. Hutton Group, Inc.*, 681 A.2d 1039, 1044 (Del.Supr. 1996).  Delaware courts will also

enforce contractual attorney fee provisions.  *Casson v. Nationwide Ins. Co.*, 455 A.2d 361, 370

(Del. Super. 1982) (noting that no attorney fees are awardable unless payment of fees is

authorized by statute or contract).  The terms of the contractual fee provision are examined to

determine whether fees are awardable pursuant to the contract's terms.  *D GYMS, LLC v.*

**MEMORANDUM DECISION AND ORDER - 12**

*Robino-Bay Court Plaza, LLC*, C.A. No. 3649-VCN, 2009 WL 196299 at *6 (Del.Ch. Jan. 15, 2009) (not allowing fees for prevailing party on a claim that settled prior to trial when the contract specified that fees were awardable only to the non-defaulting party that prevailed in "litigation").

      **3.**      **Disposition of Attorney Fee Award.**

All three contracts contain "choice of law" provisions enforceable by this Court.  There is therefore no need to engage in any further choice of law analysis.  The Asset Purchase Agreement is governed by California law, and includes an "expense" provision that states each party must bear its own costs and expenses, including attorney fees.  The Asset Purchase Agreement does not contain a fee provision addressing litigation expenses.  Therefore, in the absence of any further contractual provision regarding attorney fees, California law dictates that no attorney fees are awardable to the prevailing party under the terms of the Asset Purchase Agreement.  The same is true for the Amended and Restated Purchase Agreement, which has no fee provision at all and is interpreted according to Delaware law.  Like California, absent a contractual fee provision, no attorney fees are awardable to the prevailing party in litigation brought to enforce the Restated Purchase Agreement's terms.

However, the Distribution Agreement, also interpreted according to Delaware law, does contain a prevailing party fee clause.  According to the Distribution Agreement, the prevailing party in any litigation commenced between the parties "shall" be entitled to a reasonable sum as and for its attorney's fees.  The fee provision encompasses litigation related to "any" provision

of the Agreement, or the "rights or duties of any party in relation thereto."  Therefore, the terms of the Distribution Agreement entitle Nestle to attorney fees as the prevailing party.[6]

Count One of the Second Amended Complaint alleged Nestle breached the Distribution Agreement by manipulating the net profits obtained because of "trade loading."  Under the terms of the Distribution Agreement, the litigation relating to Count One involved the rights and duties of the parties in relation to the contractual term providing for distribution of "net profits" to Simplot by Nestle, and so falls within the contractual fee provision.  Nestle is therefore entitled to attorney fees specifically expended in relation to successfully defending itself on Count One.[7]

The remaining counts in the Complaint alleged breach of the Asset Purchase Agreement and other equitable claims.  As a result, Simplot argued that fees should be limited to one-third of the claimed amount because only one-third of the allegations in the Complaint directly related to the Distribution Agreement.  The Court disagrees.  The language of the Distribution Agreement providing attorney fees to the prevailing party when the litigation concerns "*the rights or duties of any party in relation to*" the Distribution Agreement is broad.  In *Brandin v. Gottlieb*, No. CIV. A. 14819, 2000 WL 1005954 at *28 (Del.Ch. July 13, 2000), the Delaware court gave great weight to the contractual provision concerning attorney fees, and found that if the language reasonably rejected a "claim-by-claim approach" that would authorize the court to award less than "all" the prevailing party's fees, then the court had no choice but to award "all" fees.  In *Brandin*, the attorney fee provision was similar to the fee provision in the Distribution

---

[6]  Simplot does not dispute that Nestle prevailed.

[7]  Simplot does not dispute this conclusion.

**MEMORANDUM DECISION AND ORDER - 14**

Agreement in this case, and entitled the prevailing party to all of its reasonable fees in any suit "relating to this Agreement." *Brandin*, 2000 WL 1005954 at *28.

In this case, the fee provision in the Distribution Agreement does not dictate a claim-by-claim approach.  The Court finds that all of the counts are "related to" the rights and duties of the parties with respect to the Distribution Agreement.  Although the allegations of Count Two alleged breach of the Asset Purchase Agreement, the allegations fall within the terms of the Distribution Agreement's attorney fee provision.  In Count Two, Simplot alleged that Nestle's "trade loading" breached the terms of the Asset Purchase Agreement, and that the resulting damages included lost profits under the Distribution Agreement.  According to the Distribution Agreement's fee provision, Count Two concerns the rights or duties of the parties "in relation to" the Distribution Agreement because Simplot alleged that the breach of the Asset Purchase Agreement caused lost profits under the Distribution Agreement.  Accordingly, Nestle is entitled to fees for successfully defending against Count Two.

Count Three of the Second Amended Complaint alleged breach of the covenant of good faith and fair dealing as implied in both the Distribution Agreement and the Asset Purchase Agrement.  Under Delaware law, the covenant of good faith and fair dealing is a way of "implying terms in the agreement," or used to fill gaps in the agreement, and it attaches to every contract.  *Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 441 (Del. Supr. 2005).  The same nucleus of operative facts–Nestle's alleged trade loading–is alleged as a basis for breach of the covenant of good faith and fair dealing inherent in both contracts.  There is no discernable way to apportion fees to correspond to each contract, because the defense of this claim was

**MEMORANDUM DECISION AND ORDER - 15**

integrated as to both Agreements.  Therefore, under the terms of the Distribution Agreement Nestle is entitled to the fees it incurred in defending this claim.

Counts Four, Five, Six, and Seven are, as Simplot noted, tort claims.  However, in all of these remaining claims, Simplot alleged facts based upon its theory of trade loading and misrepresentation as it related to its decision to enter into the Agreements with Nestle.  For example, Count Four, the fraud claim, alleges fraud on the basis that a Nestle representative promised that only "minimal trade loading" would occur, the same claim Simplot made with respect to its breach of contract claim concerning the Distribution Agreement.  Similarly, Count Five concerns allegations that Nestle, by virtue of its relationship with Simplot arising out of the Distribution Agreement and Asset Purchase Agreement, breached an alleged duty to disclose information to Simplot, which duty arose out of the Distribution Agreement.  Again, all of these claims concern the alleged rights or duties of Nestle in relation to the Distribution Agreement, and cannot be separated from Nestle's global defense or delineated by reference to each specific contract when the Distribution Agreement clearly encompasses such fees.[8]

Accordingly, Nestle is entitled to attorney fees for its successful defense against Simplot's claims.

### 4.     Reasonableness of the Claimed Fees.

_____

[8]  The Court's holding is in accord with the earlier findings and opinion of District Judge Edward J. Lodge in his Memorandum and Order granting summary judgment.  (Docket No. 69.)  In summarizing Simplot's arguments, the Court noted that Simplot contended the Distribution Agreement's main purpose was to preserve and maximize the profits of the dehydrated potato business, and was the driving force behind Simplot's claims.  (Order at 8, Docket No. 69.)  The Court found that the gravamen of Simplot's claims arose out of the distribution of the dehydrated potato products, which conduct was governed by the Distribution Agreement.  (Order at 19, Docket No. 69.)

**MEMORANDUM DECISION AND ORDER - 16**

Upon determining Nestle is entitled to attorney fees, the Court must calculate a reasonable fee award. *Hensley v. Eckerhart*, 461 U.S. 424 (1983), *cited in Goff v. Washington County, et al.*, Case No. CV 03-268-MHW, 2006 WL 1128222 at *2 (April 10, 2006). Generally, the "lodestar figure" is used, which multiplies the number of hours reasonably expended on the litigation and multiplies that by a reasonable hourly rate. *Id.* The Court is required to consider the factors identified in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976): "(1) novelty and complexity of the issues; (2) special skill and experience of counsel; (3) quality of the representation; (4) the results obtained; and (5) the superior performance of counsel. After calculating the lodestar, the fee may be adjusted by any non subsumed factors identified in *Kerr*." *Goff*, 2006 WL 1128222 at *2. But, a "'strong presumption' exists that the lodestar figure represents a 'reasonable fee;' thus, it should only be modified in 'rare and exceptional cases.'" *Id.* (citing *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 n. 4 (9th Cir.2000), in turn quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (internal quotations omitted)).

Hourly rates should reflect the relevant market. "A district court should calculate this reasonable hourly rate according to the prevailing market rates in the relevant community, which typically is the community in which the district court sits." *Schwarz v. Sec'y of Health and Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995) (internal quotations and citations omitted). The relevant community in this case is Boise, Idaho, where this litigation commenced.

Simplot illustrated at the hearing that Holland and Hart's rates in this case differed substantially from the rates Holland and Hart charged other clients during the same time period. For example, in *LaPeter, et. al. v. Canada Life Ins. of Am.*, No. CV 06-121-S-BLW, 2007 WL

**MEMORANDUM DECISION AND ORDER - 17**

4287489 *1 n.1(D. Idaho Dec. 4, 2007), the Court noted that Mr. Bithell was charging $405 per hour, Mr. Braley $235 per hour, and Mr. Fischenich $185 per hour.  *La Peter* decided the issue of attorney fees in December 2007.  During this time frame, the same Holland and Hart attorneys were charging Nestle $450-$475 per hour, $295 per hour, and $245 per hour respectively.  Similarly, in *Suter v. National Rehab Partners, Inc.*, 2007 WL 2790397 (D. Idaho Sept. 24, 2007), Holland and Hart attorneys charged their client less per hour during 2006 and 2007 than they were billing Nestle in this case during the same time period.  These facts uncovered in *Suter* and *LaPeter* contradict the statement of Walter Bithel in ¶ 2 of his affidavit (Docket No. 72-1) where he indicates the "rates billed to Nestle are Holland and Hart's standard hourly rates."  Mr. Bithell offers no further definition of "standard" as it relates to the law firm's rates charged to particular clients or cases.

Simplot also introduced affidavits of litigators from two other Boise law firms, Jack Gjording and David Lombardi, to further illustrate the prevailing Boise, Idaho rates for attorneys with similar years of experience as the Holland and Hart attorneys.  The affidavits illustrate managing case partners with 30-40 years of experience typically charge $250-$300 per hour; partners with 11-29 years of experience $160-$235 per hour; associates with 5-10 years of experience $140-$180 per hour; and paralegals with 5 or more years of experience $70-$110 per hour.  (Aff. of Gjording, Docket No. 80-7; Aff. of Lombardi, Docket No. 80-6.)  Greener Burke's attorney rates fall within the above ranges, while Holland and Hart's attorney rates well exceed those ranges in many instances.

Nestle did not adequately explain the discrepancies Simplot illustrated other than to argue that *LaPeter* and *Suter* hold that "regional firms are justified in charging hourly rates to large institutional clients at rates somewhat over the average rates charged by other Idaho firms

**MEMORANDUM DECISION AND ORDER - 18**

to other clients." (Reply Mem. at 14, Docket No. 87.) While Chief Judge Winmill in *LaPeter* did hold that "[i]t has been this Court's experience that attorneys at regional firms, such as Holland & Hart, charge hourly rates at or near, but not above, the high end of acceptable rates for the Boise area," Judge Winmill reduced the rate of Holland and Hart's primary counsel from $355 per hour to $300 per hour because his rate exceeded that of opposing counsel, who had ten more years of experience than the Holland and Hart attorney. *LaPeter*, 2007 WL 4287489 at *1. The Court cited other Holland and Hart rates in *LaPeter*, but did not find it necessary to analyze them. *LaPeter*, 2007 WL 4287489 at *1 n.1. Simplot aptly noted to the Court, however, that the rates charged in *LaPeter* exceed those charged by the same attorneys in this case, despite litigation occurring during the same time period.

As for *Suter*, although the Court considered Holland and Hart's rates, the Court finds *Suter* inapposite. In *Suter,* the Court was comparing the rates of out-of-state counsel with Holland and Hart attorney rates, and thus the issue of Holland and Hart's rates as compared with other Boise attorneys, at issue here, was not considered. In any event, neither *Suter* nor *LaPeter* stands for Nestle's implied proposition that the Court presumptively finds Holland and Hart rates acceptable in all cases before it.

In looking at the rates charged, the Court finds apropos the approach taken in *LaPeter* of comparing the skill and experience of counsel in terms of their years of practice and then examining the respective rates. *LaPeter*, 2007 WL 4287489 at *1 ("The Court must determine a reasonable hourly rate by considering the experience, skill and reputation of the attorneys requesting fees.") For example, the Court reduced Mr. Faucher's hourly rate as he had practiced for 20 years, but his rate exceeded that of his colleague who had practiced for over 30 years. *Id.* at *2.

**MEMORANDUM DECISION AND ORDER - 19**

In examining the rates of counsel in this case, the Court prepared Appendix A to compare the rates of similarly skilled Holland and Hart attorneys to Greener Burke's attorney rates and the prevailing rates in the community.  The Court ranked attorneys in order by years in practice. It then reduced the hourly rates charged by the four principal timekeepers, and calculated the allowed fees using the reduced rates.  The reduced rates and resulting allowed fees for Holland and Hart time keepers represent the upper end of the range for attorneys in the Boise area with similar skill and expertise as illustrated by the Gjording and Lombardi affidavits, and in keeping with the finding in *LaPeter* that regional firms like Holland and Hart charge hourly rates at or near, but not above, the high end of acceptable rates for the Boise area.

The Court excluded any time spent by attorneys who performed minimal work on the case, as well as individuals who appeared to be support personnel.  There is no explanation as to how the other seven attorneys, most of whom billed less than one hour, contributed substantially to the work of the four principal attorneys.  There is also no explanation to justify their work. The rate of the excluded attorneys is reflected as "0" resulting in $0.00 in allowed fees.

In addition, the fees for the four individuals identified as Tech Support personnel, Ms. Lucke the libararian, and Mr. Boully the consultant are disallowed and reflected as $0.00.  The tech support personnel performed database tasks to organize the voluminous amounts of data into litigation management software.  Ms. Lucke, the librarian, performed a "westcheck" search. And it is unclear how Mr. Boully contributed, as the Court cannot discern whether he was a para-professional or expert consultant.  While it is proper to include the paralegal fees of Ms. English and Ms. Montgomery, *Laurino v. Syringa General Hospital*, No. CV 98-439-S-EJL, 2005 WL 1847173 *6 (D. Idaho Aug. 3, 2005), the attorney fees should be sufficient to encompass the work of secretaries, messengers, librarians, and others, including tech support

**MEMORANDUM DECISION AND ORDER - 20**

personnel who contributed to the construction and maintenance of a document database, *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989).  Accordingly, the Court disallowed the fees of the support personnel but allowed the fees of the two para-professionals at reduced rates comparable to the high end of the prevailing rates in the Boise community.  Thus, the fee request was reduced from $1,205,381.5 to $857,013.00.

The $857,013 amount, however, does not account for the reasonableness of the time and labor expended by the six principal timekeepers, since the figure presumes all time spent was reasonable.  In examining the time and labor spent by Holland and Hart attorneys, the Court is immediately struck by the sheer number of attorneys—eleven—staffed on the case, with four attorneys and two paralegals doing the bulk of the work.  The attorneys expended 2,818.4 hours in comparison to the three attorneys at Greener Burke who spent 1,282.9 hours, a figure 54% less than the attorney time spent by Holland and Hart attorneys.  The Court therefore disagrees with Nestle's position that the time and labor required represents a reasonable amount.  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (noting that the Court may exclude hours that were not "reasonably expended").

Both law firms engaged in extensive discovery, travel, deposition preparation time, and time spent researching and writing legal briefs.  Yet, according to the supporting affidavits, Holland and Hart billed 4,402 hours on the case in comparison to the 2,694.65 hours billed by plaintiff's counsel at Greener Burke.  This sum represents 38% more hours than that spent by Plaintiff's counsel.  The $1,205,381.50 in requested fees generated by Holland and Hart also are 40% more than the $495,013.50 in fees generated by Greener Burke.  Although Nestle argues that it had millions at stake, presumably so did Simplot.  This disparity in the amount of hours, based upon nothing more than Nestle's claim that, due to the stakes, it had to mount a vigorous

**MEMORANDUM DECISION AND ORDER - 21**

defense, is not reasonable.  Presumably, Simplot mounted the same vigorous prosecution, but spent far less time doing so.

While the document production and organization may have been intensive, the legal issues presented—breach of contract, fraud, and the like—were not particularly novel or complex.  The Court also noted that Nestle attorneys and support staff met regularly as a team, and each timekeeper billed individually for the time spent.  "The Ninth Circuit has cautioned that 'courts ought to examine with skepticism claims that several lawyers were needed to perform a task, and should deny compensation for such needless duplication as when three lawyers appear for a hearing when one would do.'" *Gomez v. Reinke*, Case No. CV91-299-S-LMB, 2008 WL 3200794 at *10 (D. Idaho Aug. 7, 2008) (quoting *Democratic Party of Washington State v. Reed*, 338 F.3d 1281, 1286 (9th Cir. 2004)).  However, Nestle's approach resulted in one of the most successful results possible, victory at summary judgment.

*Suter* and *Gomez* each support reducing a fee award by a specific percentage, rather than parsing through individual time entries.  *Gomez*, 2008 WL 3200794 at *10; *Suter*, 2007 WL 2790397 at *3.  The Court finds that further reduction in the approved fees of $878,578.50 is warranted, and that a 20% reduction is appropriate for a fee award of $685,610.40.  This figure accounts for the sophisticated nature of the document production and analysis required for this case; the results obtained; duplication of work and/or unnecessary time charged by the legal "team;" and strikes a balance between the number of hours expended by Holland and Hart's attorneys as compared to Greener Burke's attorneys."

## C.    Non-Taxable, Discretionary Costs.

Simplot correctly notes that discretionary costs are only awardable pursuant to Federal law.

**MEMORANDUM DECISION AND ORDER - 22**

> Despite the absence of federal guidance concerning "other" costs, federal procedural law, not state law, governs the award of costs even though the issues, including attorney fees, were decided under Washington state law. *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1167 (9th Cir. 1995) (deciding the issue of costs under federal law although California law governed the substantive issues). This premise has been followed for over a century. *Dodge v. Tulleys*, 144 U.S. 451, 457 (1892) (noting that state law "does not determine the procedure of courts of the United States . . . or the costs which are taxable there[.]").

*Boise Tower Assoc., LLC*, 2007 WL 4355815 at *6. At the hearing, Nestle conceded Federal law was applicable despite its previous argument that the Idaho Rules of Civil Procedure applied.

The Court may award to the prevailing party pursuant to Fed. R. Civ. P. 54, as part of the award of attorney fees, "those out-of-pocket expenses that 'would normally be charged to a fee paying client.'" *Goff v. Washington County, et al.*, Case No. CV 03-268-MHW, 2006 WL 1128222 at *5 (April 10, 2006). But the decision to award costs pursuant to Fed. R. Civ. P. 54(d)(1) is a discretionary decision that resides with the district court. *Semmaterials, L.P. v. Alliance Asphalt, Inc.*, No. CV 06-320-S-LMB, 2007 WL 676675 at *4 (D. Idaho March 1, 2007) (citing *Amarel v. Connell*, 102 F.3d 1494, 1523 (9th Cir. 1996)).

During oral argument, Nestle limited its cost request to the $24,883.31 in travel expenses and $13,553.37 in computerized legal research fees. Nestle conceded its claims for mediation fees of $2,621.26, outside copy fees of $4,676.40, photocopy charges of $3,036.60, external hard drive for document production charges of $3,625.73, discovery production vendor fees of $13,959.29, and reproduction expenses of $345.00 were not proper. *See Semmaterials, L.P.*, 2007 WL 676675 at *4; *Goff*, 2006 WL 1128222 at *7 (both discussing photocopy charges, and holding that absent delineation of which photocopy charges fell within Dist. Idaho Loc. Civ. R.

**MEMORANDUM DECISION AND ORDER - 23**

54.1(c)(5), such costs would not be allowed).  All of the above costs will therefore be disallowed.

In addition, Nestle conceded all other miscellaneous costs were not proper.  Thus, the recording, subpoena issuing fee, and court records fees ($305.00); postage and courier charges ($508.92); telephone charges ($1,829.28); conference room rental/deposition preparations ($8,390.00); process server fees ($50.00); and clerical overtime ($67.50) will be disallowed.

Nestle also specifically conceded it was not entitled to expert witness or other claimed witness fees beyond that allowed by statute.  Pursuant to 28 U.S.C. §§ 1821 and 1920, the court does not have the power to award expert witness fees as costs absent contractual or explicit statutory authority.  *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 439 (1987). Unless the witness is court appointed, fees for expert witnesses are limited to what is allowed by statute.  *Goff*, 2006 WL 1128222 at *6.  Accordingly, the claims for $194,441.67 in expert witness fee costs, $6,272.11 in witness fees claimed for Camie Lynch, $3,345.25 in witness fees claimed for Tim Connor, and $2,700.00 in consultation fees for Achieve Financial will be disallowed.  Mr. Boully conceivably falls within this category as well, adding further justification for disallowing his fees.

### 1.    Computer Aided Legal Research.

In *Boise Tower Assoc., LLC*, the Court recognized that, historically, this Court "considers computer-aided research, like any other form of legal research, a component of attorney fees that should not always be independently taxed as an item of cost."  *Boise Tower Assoc., LLC*, 2007 WL 4355815 at *7 (citing *Goff v. Washington County, et al.*, Case No. CV 03-268-MHW (April 10, 2006), *cited in Gomez v. Mastec North Am., Inc.*, Case No. CV 03-421-MHW (Dec. 13, 2006)).  In *Goff*, although the Court awarded attorney fees, it held that computer-aided legal

**MEMORANDUM DECISION AND ORDER - 24**

research "cannot be independently taxed as an item of cost in addition to the attorneys' fee awarded by the Court," and disallowed those costs.  *Goff*, 2006 WL 1128222 at *6.

More recently, however, the Court recognized the Ninth Circuit's reference to the split among the circuits concerning whether expenses for computer-based legal research are compensable as reasonable attorney fees.  *Bjornson v. Dave Smith Motors*, 578 F.Supp.2d 1269, 1289 (D. Idaho July 31, 2008).  The Ninth Circuit has "endorsed the view of what it called 'the growing circuit consensus' that computer-based legal research costs should be treated the same as attorneys' fees and are recoverable if separate billing for such expenses is the 'prevailing practice in the local community.'" *Bjornson*, 578 F.Supp.2d at 1289 (quoting *Trustees of Const. Industry & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006)).  The Court in *Bjornson* awarded $2,524.95 in legal research fees, finding that amount to be reasonable in that case.  *Id.*

Simplot argued the Distribution Agreement, with its reference to attorney fees and exclusion of any reference to costs, would not permit recovery of discretionary costs.  The Court disagrees, based upon *Bjornson* and *Redland Ins. Co.*  Both cases characterized computer aided legal research as a component of the "attorneys' fees."  Nestle's attorneys asserted that they charged Nestle separately for computer aided research.  However, as with fees, such costs must be "reasonable."  Simplot's computer aided research fees were only $2,761.74.  The parties presumably addressed the same legal issues, but Nestle's research fees were more than six times Simplot's research fees.[9]

---

[9]  Whether this disparity could be due to a less than favorable contract rate between Westlaw and Holland and Hart, or that Holland and Hart associates performed more research, was not explained.  The Court notes Holland and Hart attorneys also billed for their time spent legal researching.

**MEMORANDUM DECISION AND ORDER - 25**

The Court finds Nestle's claim for $13,553.37 in computer aided research fees is excessive.  The parties addressed the same issues and discussed the same legal case law concerning basic claims such as breach of contract and fraud.  While the factual nuances may have been complex due to the volume of material to assimilate, the legal issues were not particularly complex.  Nestle's memorandum in support of its motion for summary judgment dealt with contract law pursuant to the Uniform Code.  (*See* Docket No. 44.)  There were no other substantive motions filed by the parties, with the exception of the instant motion for attorney fees.  The attorneys billed for their time spent researching in addition to the computer aided research costs.  Accordingly, as a component of attorney fees which are recoverable under the Distribution Agreement and *Bjornson*, the Court will award Nestle its computer aided legal research costs, but finds that the same 20% reduction applied to achieve a reasonable attorney fee applies in this instance as well.  The Court therefore awards $10,842.70.

      **2.**     **Travel Expenses.**

Nestle claims $24,883.31 in travel expenses.  Nestle's attorneys traveled  to California, Ohio, and other locales to meet with Nestle personnel, prepare them for depositions, defend depositions, and assist with the compilation of discovery responses.  The charges represent airfare, hotel, and rental car costs.  Nestle clarified at the hearing that attorney travel time was billed separately as a component of attorney fees and is not included in this discretionary cost amount claimed.

There is precedent in this district for awarding travel expenses as a component of non-taxable costs.  *See Goff*, 2006 WL 1128222 at *5.  However, in *Goff*, the travel expense award amounted to $29.34.  In this case, travel expenses reached more than $24,000, and in contrast to Simplot's travel expenses, Nestle's expenses are almost three times the $9,951.86 amount

**MEMORANDUM DECISION AND ORDER - 26**

incurred by Simplot.  The Court recognizes Nestle is headquartered in California but was required to hire local Boise counsel, while Simplot is a local Idaho company with local counsel. Simplot highlighted that several depositions of Nestle personnel were taken via video conference, and rather than defend the depositions from Boise, Nestle's Boise attorneys instead traveled to California often with several other attorneys.  The Court declines to second guess whether Nestle's attorneys' decision to be present in California or elsewhere to prepare and defend depositions was reasonable.

Nevertheless, in examining the attorneys' claimed fees, the fees reflect that the attorneys claimed their entire hourly rate and the multiple hours expended sitting on an airplane, and failed in most instances to identify whether the travel time was productive travel versus non productive travel.  For example, Mr. Bithell on February 13, 2008, billed for ten (10) hours to "travel round-trip to Wenatchee, WA, for witness meeting with Ms. Camiekae Lynch."  There is no indication how long he spent traveling, whether or not he performed productive legal work while traveling, or how long his witness meeting with Ms. Lynch lasted.  Similarly, on March 17 and March 18, 2008, there are two nine hour time entries lumped together with travel time to Denver with no indication whether the travel time was productive.  There is also no explanation whether the travel time represents time traveling one-way or round-trip.

The Court finds it unreasonable to claim travel expenses while at the same time billing for unproductive time spent traveling.  The time spent traveling, which the Court has allowed albeit at reduced rates, reimburses Holland and Hart for a portion or perhaps the entirety of its expenses incident to travel.  Accordingly, in the exercise of its discretion, the Court will not allow the $24,883.31 in travel expenses.

**MEMORANDUM DECISION AND ORDER - 27**

## <u>ORDER</u>

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS**

**HEREBY ORDERED that:**

1)      Defendant's Petition for Attorney Fees and Non-Taxable Costs (Docket No. 72) is

**GRANTED IN PART AND DENIED IN PART** consistent with this opinion.  The Court

awards Nestle $685,610.40 in attorney fees and $10,842.70 in discretionary costs.

DATED: July 20, 2009



Honorable Candy W. Dale
Chief United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 28**